**ANIMAL LOVERS VOLUNTEER ASSOCIATION, INC., et al., Plaintiffs,**

v.

**Richard CHENEY, et al., Defendants.**

**No. CV 86–4992–RJK.**

United States District Court, C.D. California.

April 7, 1992.

Stipulation for Compromise Settlement and Order Dismissing Action
July 7, 1992.

Wm. Marshall Morgan, Anthony F. Latiolait, M. Jill Morris, Morgan, Wenzel & McNicholas, Los Angeles, Cal., for plaintiffs.

Lourdes G. Baird, U.S. Atty., Leon W. Weidman, Asst. U.S. Atty., Chief, Civ. Div., Peter Hsiao, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION ORDER AND JUDGMENT

KELLEHER, Senior District Judge.

Defendants brought this Motion for Summary Judgment Against Plaintiffs' Third and Fourth Causes of Action. The Court took the matter under submission and hereby renders its opinion.

## I. BACKGROUND

This law suit was instituted in July of 1986 by plaintiffs Animal Lovers Volunteer Association ("ALVA"). Defendants United States Fish and Wildlife Service (the "Service"), United States Navy and United States Department of Defense had recently begun trapping red fox at the Seal Beach National Wildlife Refuge in order to protect two endangered bird species on the Refuge, the California least tern and the light-footed clapper rail. The actions of the federal agencies at the Refuge are subject to the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, the National Wildlife Refuge System Administration Act (NWRSAA), 16 U.S.C. § 668dd, and the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*

Initially ALVA sought to compel defendants to prepare, and file with the Environmental Protection Agency, an Environmental Impact Statement ("EIS") regarding their fox control plan. ALVA was eventually successful and pursuant to an order of this Court, defendants prepared and filed an EIS.

On February 3, 1992, this court granted summary judgment in defendants' favor on the first and second causes of action finding that the EIS complied fully with NEPA and the federal regulations promulgated thereunder. 795 F.Supp. 991 Defendants are now moving for summary judgment on the third and fourth causes of action. The third cause of action alleges that defendants violated the NWRSAA, 16 U.S.C. § 668dd(d)(1)(A), by permitting the Refuge to be used in ways that are incompatible with the major purpose for which the area was established. The fourth cause of action alleges that defendants violated APA, 5 U.S.C. § 706, by abusing their discretion.

## II. LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgement upon a showing that there are no material facts in dispute and that it is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing the motion may defeat it by showing that there is a genuine issue of material fact in dispute. *Id.*

### B. Judicial Review under APA

### 1. *Standard of Review*

The APA provides that the Court may

review "final agency action" [1] to determine if such action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

> [The] decision is entitled to a presumption of regularity. But that presumption is not to shield [the] action from a thorough, probing, in-depth review.... [T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Volpe,* 401 U.S. at 415–16, 91 S.Ct. at 823–4 (citations omitted).

The decision is to be upheld "if substantial evidence supports the agency's findings of fact and a rational connection exists between the facts found and the choice made." *Cleghorn,* 813 F.2d 992, 995 (9th Cir.1987).

### 2. *Scope of Review*

The court's review should be limited to "the administrative record already in existence, not some new record made initially in the reviewing court" unless (1) the record fails to explain the basis for the agency action, (2) the agency has relied upon materials not included in the record, or (3) additional evidence is necessary in order to explain technical terms or complex subject matter. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *Cleghorn,* 813 F.2d at 997; *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988).

"Predominant is the rule that agency action must be examined by scrutinizing the administrative record at the time the agency made its decision." *Asarco, Inc. v. U.S. EPA,* 616 F.2d 1153, 1159 (9th Cir.1980). Yet, the court may look at evidence outside of the record "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Id.* at 1160. But, the court must not consider the additional evidence in order to evaluate the wisdom or correctness of the decision. *Id.*

### C. Judicial Review under the NWRSAA

It has been suggested that the NWRSAA does not include any provisions for a private right of action against the United States or any of its agencies for alleged violations of the statute. In that case, plaintiffs would be limited to pursuing a claim under the APA for final agency action taken pursuant to NWRSAA. Plaintiffs have not responded to this argument.

 While the statute does not expressly provide for a private right of action, *see* 16 U.S.C. § 668dd, this is not determinative. Yet, it does appear from review of the statute that the standard of review for this claim is identical to that for the APA claim.

> § 668dd(d)(1)(A) provides that
>
> The Secretary is authorized, under such regulations as he may prescribe, to— permit the use of any area within the System for any purpose ... whenever he determines that such uses are compatible with the major purposes for which such areas were established ...

This provision clearly gives the Secretary the discretion to determine what uses are compatible. While the statute provides limitations upon certain other actions, there are no limits placed upon this determination.

Thus, if the Secretary's decision is reviewable at all, it is reviewable solely for an abuse of this discretion.

---

**1.** *See* 5 U.S.C. §§ 702 and 704; *Lujan v. National Wildlife Federation,* 497 U.S. 871, ——, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990).

## III. ANALYSIS

### A. Scope of Review

■ In opposing this motion, the plaintiffs have submitted a large amount of supplemental evidence which they contend they court should consider. The defendants contend that this is inappropriate and unnecessary.

Defendants are correct. The administrative record, including the EIS and the Record of Decision, (1) clearly indicates the basis for the agency action, (2) contains all the materials relied upon by the agency, and (3) is understandable without resort to additional materials. Additionally, plaintiffs were given numerous opportunities to contribute materials to the administrative record and their submissions and detailed individual responses thereto were all included in the EIS. Therefore, there is no need to look outside the administrative record to determine now, after the fact, if the defendants considered all the relevant factors.

Moreover, this limited scope of review is appropriate for not only the APA claim, but also for the NWRSAA claim, if it exists as a independent claim. The same rationales apply to the NWRSAA claim since the court will be conducting the same abuse of discretion review.

Therefore, the review under both claims shall be limited to the administrative record.

### B. Analysis

The plaintiffs are claiming that the defendants abused their discretion under the NWRSAA and the APA by permitting oil production at the refuge, in choosing to kill red foxes when it is not necessary, and in conducting the predator control program in a way that unnecessarily harms the foxes and other animals. ·

### 1. Oil Production at the Refuge

It is undisputed that the major purpose for which the area was established was the preservation of wildlife.[2] The defendants currently permit a limited amount of oil production at the refuge. Plaintiffs argue that the oil production is more harmful to the endangered bird species than the foxes. They contend that the oil production limits the production of spirulina grass which is the habitat for the light-footed clapper rail, including both the adult birds and the nesting eggs. Therefore, the oil production is inhibiting the rail population and is thus incompatible with the purpose of preserving wildlife. Moreover, it establishes that it is arbitrary and capricious to kill the red foxes when that does nothing about this more fundamental threat to the population.

#### a. No Standing

■ Defendants contend that ALVA has no standing to object to the oil production at the refuge. ALVA bases its standing upon its members' interest in enjoying the environment, including observing and feeding the animals at the refuge. Clearly, they have alleged the requisite connection between the oil production and these animals to bring this within the scope of their suit.

#### b. Is The Decision to Permit Oil Production at the Refuge Agency Action?

Defendants argue that the decision to permit oil production at the refuge is not agency action subject to challenge under NWRSAA or the APA, but rather it is an action taken by Congress when the refuge was established in 1972.

When Congress established the Refuge, the Senate Report explicitly recognized that the former owners of a portion of the land retained the oil and gas rights and stated that the oil production would be allowed to continue. Seal Beach National Wildlife Refuge, Pub.L. No. 92–408, 86 Stat. 633 (1972), *reprinted in* 1972 Code Cong. & Ad. News 724; S.Rep. No. 92–1075, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 Code Cong. & Ad. News 3076, 3078.

---

**2.** Seal Beach National Wildlife Refuge, Pub.L. No. 92–408, S.Rep. No. 92–1075, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 Code Cong. & Ad. News 3076, 3077; 16 U.S.C. § 668dd(a)(1); 50 C.F.R. § 25.11 (1989).

Plaintiffs only response appears to be that when Congress authorized oil production it did not know the effect of such activities upon the spirulina grass. Thus, the court can only assume that plaintiffs are taking the position that the defendants failure to terminate the oil production at some later date is the final agency action being challenged herein.

The court may only evaluate final agency action, as that term is defined in 5 U.S.C. § 551. *See* Footnote 1, *supra.* Thus, the court will consider the plan implemented pursuant to the EIS as the action subject to review.

c. Analysis

██ The EIS includes documentation of extensive pollution studies evaluating the introduction of contaminants, if any, and their impact on the wildlife at the Refuge. These studies determined that no contaminants were present in biota or sediment that would pose acute or significant toxicity directly to the wildlife at the Refuge. See EIS 2–125, 2–128. ALVA is not challenging the methodology or conclusions of these studies, but rather contends that they fail to evaluate the impact of the contaminants on the flora and fauna of the region. ALVA submits that it does not have the funds to undertake such studies.

The administrative record also reveals that the defendants have already commenced additional studies and programs for reducing any pollution at the Refuge. See EIS 2–115 *et seq.*; Record of Decision 11, 17. These additional studies may produce findings that call into question the wisdom of continuing the oil production. That is not for this court to decide. But, the court does note that these additional studies are called for as part of the agency's decision, which is the final agency action.

The Court is convinced that at the time that it made the decision, the defendants considered all the relevant factors, that substantial evidence supported the findings, and that a rational connection existed between the findings and the decision to allow the limited amount of oil production to continue. Thus, defendants' conduct complied fully with the requirements of the NWRSAA and the APA.

### 2. *The Predator Control Program*

Clearly, the adoption of the predator control program is not, in itself, necessarily incompatible with the purposes of the refuge. Plaintiffs contend though that the decision to control the red fox population in order to save the rare birds is an abuse of discretion and capricious since there is no proof that the red foxes are preying on the birds.

██ Plaintiffs further contend that the manner in which the decision is implemented is an abuse of discretion. They contend that the defendants unnecessarily chose to kill the red foxes instead of using alternative methods of controlling the species and that their use of traps that catch animals results in the unnecessary death of animals other than red foxes that are caught in them. They make various additional accusations regarding the inhumane and cruel treatment of the red foxes by the defendants.[3]

The Court has considered these allegations and has determined that the defendants actions did not constitute an abuse of discretion and therefore were not violations of the NWRSAA and the APA. The administrative record demonstrates that the defendants considered all the relevant factors and came to a decision that is rationally supported by substantial evidence.

The agency considered all the evidence and determined that the red foxes were playing a substantial enough role in inhibiting the two endangered bird species to justify controlling the red fox population. The agency then carefully considered all reasonable alternative methods of effectuating this decision and decided upon the multi-faceted program currently being followed. In the course of making those deci-

---

**3.** The allegation regarding the use of the poison T–61 is moot since defendants no longer use T–61 nor could they since it is no longer commercially available. Plaintiffs cannot base their claim on a prior abuse of discretion if it has now ceased.

sions the agency considered all the contrary evidence and arguments submitted by ALVA and others.

■ Looking beneath the inflammatory rhetoric of plaintiff's disjointed arguments, it is clear that the plaintiffs are asking the court to substitute its judgment for that of the agency's. The APA and NWRSAA do not give the Court the authority to evaluate whether the agency's decision was the wisest decision.

### 3. *Conclusion*

The plaintiff's have failed to show that there are any material facts in dispute regarding whether the defendants fulfilled their obligations under the NWRSAA and the APA. Since it is clear that they did, summary judgment must be granted.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT summary judgment is entered in favor of defendants on plaintiffs' third and fourth causes of action.

### STIPULATION FOR COMPROMISE SETTLEMENT AND ORDER DISMISSING ACTION

WHEREAS the Court entered summary judgment for defendants on April 9, 1992;

WHEREAS the parties agree that plaintiffs will forgo their appeal and bear their own attorney fees and costs in consideration for defendants' agreement that they will withdraw their pending request to tax costs and forgo seeking their attorneys fees:

IT IS HEREBY STIPULATED AND AGREED by and between all plaintiffs ANIMAL LOVERS VOLUNTEER ASSOCIATION, INC. (A.L.V.A.), PAULINE BAERG, LISA CURRAN, PAT LLEWELYN, AND HAROLD BAERG (hereinafter "plaintiffs"), and defendants RICHARD E. CHENEY, H. LAWRENCE GARRETT III, MARVIN PLENERT, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF NAVY, and U.S. FISH AND WILDLIFE SERVICE (hereinafter "defendants"), through counsel, that the above-entitled action may be settled and compromised on the following terms and conditions:

1. Plaintiffs and defendants agree that each side will bear all of their own attorney fees and costs, and that defendants will withdraw their pending request to tax costs.

2. In consideration for defendants' agreement to forgo seeking its attorney fees and costs, the parties agree that this case may be dismissed with prejudice. Plaintiffs and each of them agree to forgo filing any appeal in this case.

3. Plaintiffs and their successors and assigns hereby execute a general release of defendants in full settlement and satisfaction of any and all claims, rights, and causes of action of whatsoever kind and nature, which they may have or hereafter acquire against the United States or its agencies, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned lawsuit. Plaintiffs explicitly release any and all claims against defendants which the plaintiffs do not know or suspect to exist in their favor at the time they execute this stipulation and general release, which if known to plaintiffs must have materially affected plaintiffs' settlement with defendants.

4. This written agreement contains all of the agreements between the parties, and is intended to be and is the final and sole agreement between the parties. The parties agree that any other prior or contemporaneous representations or understandings not explicitly contained in this written agreement, whether written or oral, are of no further legal or equitable force or effect. Any subsequent modifications to this agreement must be in writing, and must be signed and executed by the parties.

5. The undersigned represent that they have reviewed, approved and understand this agreement, and that they are fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby.